UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10075-RGS

HARRIET J. BALERNA

v.

CARMEL A. GILBERTI and MELVIN L. LEWIS
and EDWARD F. LEWIS, both individually and as
Executors of the Estate of Helen Lewis

MELVIN L. LEWIS, as Executor of the Estate of Helen Lewis

v.

ALFRED J. BALERNA, et al.

ORDER ON HARRIET J. BALERNA'S MOTION TO DISMISS OR
STRIKE CROSS-CLAIM OF PHILIP DOMBROWSKI AND
JEANNIE KLIBANOFF-DOMBROWSKI

March 25, 2010

STEARNS, D.J.

The plaintiff and third-party defendant Harriet J. Balerna seeks to dismiss a cross-claim brought by third-party defendants, Philip Dombrowski and Jeannie Klibanoff-Dombrowski (Dombrowskis), against herself and Alfred Balerna, on the grounds that the cross-claim is impermissible under Fed. R. Civ. P. 13(g).  For the reasons to be stated, the cross-claim will be dismissed.

BACKGROUND

On January 16, 2009, Harriet J. Balerna, a resident of California, filed a diversity Complaint against three Massachusetts residents, Carmel A. Gilberti, Melvin L. Lewis, and his son, Edward F. Lewis.  In the Complaint, Balerna alleges common-law conversion and

breach of fiduciary duty. She seeks an accounting and declaratory judgment arising from a mortgage foreclosure sale of real estate located at 110 Wild Harbor Road in North Falmouth, Massachusetts (Property). Defendants filed their Answers on March 22, 2009. The parties largely agree about the early chapters of the history giving rise to the dispute.

Alfred J. Balerna acquired title to the Property by virtue of a Quitclaim Deed dated January 10, 2000, which was recorded with the Barnstable Registry of Deeds in Book 12778, at Pages 200-201, on January 13, 2000. On or about April 20, 2001, Balerna granted Helen Lewis a $26,500 mortgage and security agreement in the Property. The mortgage was recorded with the Registry of Deeds in Book 13746, at Pages 5-15.[1] This mortgage constituted the senior lien on the Property. Five months later, on September 21, 2001, Balerna granted his then-wife, Harriet J. Balerna, a mortgage in the amount of $136,000 in the Property, which was subsequently recorded with the Registry of Deeds in Book 14256, at Pages 206-208. This second mortgage was immediately junior to the mortgage interest earlier granted to Lewis. No intervening liens or encumbrances were recorded on the Property.[2]

Helen Lewis died on June 8, 2003. On August 26, 2004, Melvin Lewis was appointed as her Executor. On November 22, 2004, Melvin Lewis, acting in his capacity as Executor, granted his son, Edward Lewis, power of attorney to carry out a foreclosure and sale of the mortgage and security agreement held by the Estate. That same day,

---

[1] A confirmatory mortgage and security agreement dated October 22, 2001, was subsequently recorded with the Registry of Deeds in Book 14352, at Pages 297-307.

[2] Subsequent to the recording of the second mortgage, a flurry of additional liens were recorded on the Property.

Edward Lewis granted power of attorney to Carmel Gilberti, an attorney licensed to practice law in Massachusetts, to carry out the foreclosure.

On or about December 3, 2004, Gilberti commenced a foreclosure action in Barnstable Superior Court. Alfred Balerna failed to defend the action and a default was entered against him on February 23, 2005. On March 2, 2005, a default judgment was entered authorizing the foreclosure sale.

On April 22, 2005, Gilberti, acting on behalf of the Estate, made an "open, peaceable, and unopposed entry" onto the Property for the purpose of conducting the sale. Following a public auction, the highest bidder defaulted. The second and third highest bidders were contacted, but both declined to purchase the Property. On September 12, 2005, a second auction was held. Following the second auction, the highest bidder again defaulted. The second highest bidder, Edward Lewis, agreed to purchase the property for $145,000. By virtue of a Massachusetts Foreclosure Deed dated October 12, 2005, recorded with the Registry of Deeds in Book 20357, at Pages 331-334, Melvin Lewis, as Executor of the Estate of Helen Lewis, granted Edward Lewis title to the Property. From that point on, the parties agree on very little other than that defendants have not provided Balerna with an accounting or distributed any surplus funds to her as the holder of the junior mortgage.[3]

Harriet Balerna alleges that Gilberti held the sale proceeds in escrow on behalf of the Estate and made various unauthorized payments from the escrowed funds over the

---

[3]On August 17, 2009, Melvin Lewis deposited $33,266.25 into the court's registry, and on January 4, 2010, submitted an accounting of the foreclosure sale proceeds in accordance with a December 1, 2009 Order of the court.

course of the next two to three years. Balerna contends that Gilberti used proceeds from the foreclosure sale to pay legal fees and expenses that did not arise from the foreclosure action or sale. Specifically, Balerna alleges that Gilberti applied proceeds from the foreclosure sale to pay the fees and expenses associated with defending herself and Edward Lewis in a separate civil action filed on or about October 15, 2005, by James and Ruth Drowne and others in Barnstable Superior Court.

On August 10, 2009, Melvin Lewis filed a Third-Party Complaint interpleading twelve third-party defendants, including the Dombrowskis, who may potentially hold claims to the balance of the proceeds from the foreclosure sale. The Dombrowskis answered the Third-Party Complaint on November 10, 2009, and asserted two cross-claims, including one against Harriet and Alfred Balerna.

In their cross-claim the Dombrowskis contend that they are entitled to a $30,000 judgment against the Balernas, resulting from their purchase of two 99-year boat slip leases at the Half-Tide Marina (Marina) in Mashpee, Massachusetts. The leases were purchased from Edgewater Investment Limited Partnership (EILP) for $101,650 in November of 2000.[4] The development of the Marina was commercially funded and subject to a recorded mortgage in favor of an unidentified third-party. EILP also granted a security interest to Alfred Balerna in equipment belonging to the Marina, which the Dombrowskis

---

[4]The Dombrowskis allege that: (1) in 1998, Alfred Balerna began working for James Drowne on the financing of real estate transactions and other ventures and that these transactions were done in the name of Edgewater Investment Group, Inc. (EIG), which Drowne controlled; (2) Balerna and Drowne would alternate as the President of EIG, at times to conceal Drowne's involvement in a particular transaction; (3) Balerna became the sole stockholder of EIG to allow Drowne's ownership interest to be hidden from regulators; (4) EIG was the general partner of EILP; and (5) Drowne and Balerna effectively dominated EILP.

argue was intended to give Balerna undue precedence over creditors of both EILP and EIG. The foreclosure on the Marina's mortgage in September of 2001 cost the Dombrowskis the entire value of their boat slip leases.

After the foreclosure and the loss of the value of their slip leases, the Dombrowskis brought suit in Barnstable Superior Court against a number of defendants, including EIG and EILP. The Dombrowskis obtained a judgment in 2005 against EIG and EILP and an execution in the amount of $152,519.79. Meanwhile in 2004, Alfred and Harriet Balerna commenced an action in Barnstable Superior Court against Timothy Leedham, the purchaser of the Marina, alleging that he had taken possession of equipment subject to the security interest held by Balerna. Leedham settled the case in exchange for payment of $30,000, which he made by a check dated March 6, 2007, payable to "Joseph Coppola as attorney for Harriet Balerna." On November 25, 2009, Harriet Balerna filed a motion to dismiss the Dombrowskis' cross-claim against herself and Alfred Balerna.

## DISCUSSION

"The general policy behind allowing cross-claims is to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps." 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1431 (2d ed. 1990). A party may bring cross-claims against any co-party "if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim therein, or if the claim relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g). The district court is to liberally apply the provisions of subsection (g) in order to promote the expeditious and economical

5

adjudication of disputes. See Avemco Ins. Co. v. Aerotech, Ltd., 677 F. Supp. 35, 37 n.4 (D. Mass 1987), citing Donovan v. Robbins, 588 F. Supp. 1268, 1273 (N.D. Ill. 1984). Rule 13(g), however, limits a party from asserting every claim that it might possess against a co-party. Rather, it authorizes the bringing *only* of those claims that are *closely related* to either other pending claims or the property that is the subject of the underlying action. See Degree of Honor Protective Ass'n v. Charles T. Bisch & Son, Inc., 194 F. Supp. 614, 615 (D. Mass. 1961). The necessary inquiry is whether the Dombrowskis' cross-claim may proceed through either of the alternatives permitted by the Rule – either that it arises out of the foreclosure sale or that it relates to the Property or to the surplus funds.

In AXA Global Risks U.S. Ins. Co. v. Roberts, the New Hampshire District Court explained the standards applicable to a determination of what constitutes the "same transaction or occurrence." They are:

1. Whether the issues of fact and law are generally the same . . .;

2. Whether res judicata or collateral estoppel would bar a subsequent suit on defendant's cross-claim . . .;

3. Whether the same evidence will support or refute both the original claim and the cross-claim . . .; and

4. Whether there is a logical relationship between the claim and cross-claim . . . .

Id., 2000 WL 1480690, at *2 (D.N.H. 2000), citing James M. Wagstaffe, et al., California Practice Guide, Federal Civil Procedure § 8:333, at 8-73 (1999).

In this case, the original action arose out of the granting of two mortgage security instruments by Alfred Balerna in the Property and its subsequent foreclosure sale by the

first mortgagee, while the Dombrowskis' cross-claim arises out of their purchase and subsequent loss of the two boat slips at the Marina. The only commonality shared between the two sets of transactions is that Alfred Balerna was the owner of the Wild Harbor Road Property, and was involved as an officer and secured creditor of the entity responsible for developing the Marina. Beyond that, they are entirely unrelated. There are no common issues of fact or law that would be implicated in the adjudication of the claims. The original claim (as well as the interpleader claims) requires consideration of the first mortgagee's foreclosure accounting and the relative priority rights of the junior lienholders to the surplus funds generated by the sale of the Property. The Dombrowskis' cross-claim requires wholly independent consideration of the personal and business transactions between Alfred Balerna, James Drowne, and the Dombrowskis. Resolution of the original action will have no effect on the claim of the Dombrowskis, nor will they be prejudiced by the court's refusal to take jurisdiction. Neither res judicata nor collateral estoppel will attach as a result of this litigation and the Dombrowskis' claim is not otherwise time-barred.

Finally, the Dombrowskis' cross-claim is not closely related to the property which is the subject matter of the original action – the surplus funds. The Dombrowskis seek to secure a portion of the funds that may inure to Harriet Balerna by reason of her second mortgage lien on the Property to compensate them for the losses they incurred as a result of their dealings with Drowne, Alfred Balerna, EILP, and EIG. There is no logical relationship between the cross-claim and the surplus funds on deposit with the court.

### ORDER

For the foregoing reasons, plaintiff Harriet Balerna's motion to dismiss the cross-

claim of Philip Dombrowski and Jeannie Klibanoff-Dombrowski against Harriet Balerna and Alfred Balerna is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE